FILED 2015 MAR 11 P 3:30 CIVIL DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

**NO.:** 2015-2246 **DIVISION** E **SECTION** 16

**FOUNDATION FOR LOUISIANA f/k/a**
**LOUISIANA DISASTER RECOVERY FOUNDATION, INC.**

**VERSUS**

**PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC**
**AND FIRST NBC BANK**

---

**PETITION**

---

**NOW INTO COURT**, through undersigned counsel, comes Petitioner, Foundation for Louisiana, formerly known as Louisiana Disaster Recovery Foundation, Inc., which files this *Petition*, pursuant to La. Code Civ. Proc. art. 1871, *et seq* and La C.C. art. 1986, *et seq.,* and respectfully avers as follows:

**PARTIES**

1.

Petitioner, Foundation for Louisiana, formerly known as Louisiana Disaster Recovery Foundation, Inc. (hereinafter referred to as "Foundation for Louisiana"), is a non-profit corporation organized and existing under the laws of the State of Louisiana, with its principal place of business located in Baton Rouge, Louisiana.

2.

Made Defendants herein are:

a. Pontchartrain Park CDC Real Estate Holdings, LLC ("Pontchartrain"), a limited liability company registered to do and doing business in the State of Louisiana, with its registered office located in New Orleans, Louisiana; and

b. First NBC Bank ("First NBC"), a lending institution, incorporated in the State of Louisiana with its registered office located in New Orleans, Louisiana.

## JURISDICTION AND VENUE

3.

This Court has original, subject matter jurisdiction over this civil action as a court of general jurisdiction.

4.

Based on the facts and pleading herein, venue is proper in this Court pursuant to Louisiana Code of Civil Procedure Articles 42, and/or 76.1.

## FACTUAL ALLEGATIONS

5.

In December 2009, Petitioner, Foundation for Louisiana, agreed to provide a $500,000 Program Related Investment ("PRI") to support Pontchartrain's redevelopment project by providing Pontchartrain additional collateral to obtain a construction loan for a residential home development project (the "Project"). A copy of the PRI Agreement is attached as Exhibit "A".

6.

The Foundation for Louisiana entered into an Assignment of Deposit Account dated March 12, 2010 (the "Assignment"), through which Foundation for Louisiana granted a security interest in two certificates of deposits to First NBC (collectively the "CDs") to secure Pontchartrain's loan from First NBC. A copy of the Assignment is attached as Exhibit "B".

7.

The Assignment dated March 12, 2010 provides that:

> Anything herein to the contrary notwithstanding, this Agreement is effective for a period (the "TERM") limited to (a) one (1) year from the date hereof or (b) the construction of the first ten (10) homes, whichever comes first.

8.

The Assignment further provides that:

> Unless the Grantor should in writing extend its assignment of the Account, upon expiration of the Term, the Account shall cease to be collateral for, and shall not secure any indebtedness of Borrower to Lender, and to the extent not previously applied to the indebtedness, the Account shall be returned to Grantor at that time. It is further understood that Grantor shall have no financial obligation under this Agreement, its sole obligation being the delivery of the assignment of the Account as security for the Indebtedness for the Term of the Agreement.

9.

Foundation for Louisiana consented to a renewal and extension of the Assignment for an additional six (6) months, with the new term expiring on September 30, 2011 (the "First

Extended Maturity Date"). A copy of the Extension Letter dated February 11, 2011, is attached as Exhibit "C" (the "First Extension Letter").

10.

Foundation for Louisiana consented to a further renewal and extension of the Assignment for a six (6) month period through March 14, 2012 (the "Second Extended Maturity Date"). A copy of the Extension Letter dated September 13, 2011, is attached as Exhibit "D" (the "Second Extension Letter").

11.

Foundation for Louisiana consented to a further renewal and extension of the Account through June 14, 2012 (the "Third Extended Maturity Date").

12.

Foundation for Louisiana consented to a further renewal and extension of the Assignment for a one (1) month period through July 14, 2012 (the "Fourth Extended Maturity Date"). A copy of the Extension Letter dated June 14, 2012, is attached as Exhibit "E" (the "Fourth Extension Letter").

13.

Foundation for Louisiana consented to a further renewal and extension of the Assignment through December 31, 2012 (the "Fifth Extended Maturity Date"). A copy of the Extension Letter dated July 13, 2012, is attached as Exhibit "F" (the "Fifth Extension Letter").

14.

Foundation for Louisiana consented to a renewal and extension of the Assignment through July 13, 2013 (the "Final Extended Maturity Date"). A copy of the Extension Letter dated December 21, 2012, is attached as Exhibit "G" (the "2012 Letter"; and the 2012 Letter, together with the First Extension Letter, Second Extension Letter, Fourth Extension Letter and Fifth Extension Letter, are referred to herein, collectively, as the "Extension Letters").

15.

Pursuant to the 2012 Letter and the terms of the Assignment, the Assignment terminated on the Final Extended Maturity Date, July 13, 2013.

16.

The 2012 Letter further provides that "[a]ll other terms, conditions and provisions of the Assignment shall remain in full force and effect except to the extent expressly modified herein." (Ex. "G").

17.

The Final Extended Maturity Date of the Assignment has passed, and First NBC did not apply the CDs to the Indebtedness of Pontchartrain prior to the Final Extended Maturity Date.

**COUNT I**

18.

Foundation for Louisiana repeats all assertions contained in Paragraphs 1 through 17 of this Petition, and incorporates them by reference as though they were set forth herein.

19.

Pursuant to the terms and conditions of the Assignment, the CDs have ceased to be collateral for the Indebtedness of Pontchartrain.

20.

Foundation for Louisiana has demanded return of the CDs from First NBC. A copy of the Demand Letter dated August 27, 2013, is attached as Exhibit "H".

21.

By refusing or failing to release the CDs to the Foundation for Louisiana, First NBC has breached its mandatory duties under the Assignment.

**COUNT II**

22.

Foundation for Louisiana repeats all assertions contained in Paragraphs 1 through 21 of this Petition, and incorporates them by reference as though they were set forth herein.

23.

In return for the PRI, Pontchartrain agreed to pay Foundation for Louisiana the simple interest rate of three percent (3%) per year. (Ex. "A").

24.

Pursuant to the terms of the PRI Agreement, interest payable to Foundation for Louisiana became due "either (a) twelve months from date of deposit, or (b) after the construction and sale of the first ten homes". (Ex. "A").

25.

The simple interest payment of three percent (3%) for the first year of the PRI is evidenced by a Promissory Note dated December 14, 2009, in the stated principal amount of $15,000, executed by Pontchartrain and payable to Foundation for Louisiana ("Promissory Note"). A copy of the Promissory Note is attached as Exhibit "I".

26.

At the agreed upon simple interest rate of three percent (3%) per year on the $500,000 PRI, the total accrued and unpaid interest presently due and payable is $79,637.04, as of March 9, 2015.

27.

Foundation for Louisiana made demand for payment by several written notices to Pontchartrain. A copy of the Demand Letters dated March 6, 2012, March 7, 2012, December 14, 2014 and August 29, 2013 are attached as Exhibit "J", *in globo*.

28.

The PRI Agreement and Promissory Note are in default.

**COUNT III**

29.

Foundation for Louisiana repeats all assertions contained in Paragraphs 1 through 28 of this Petition, and incorporates them by reference as though they were set forth herein.

30.

First NBC has failed to release the CDs to Foundation for Louisiana and continues to hold the CDs as collateral for Pontchartrain's indebtedness to First NBC. Therefore, Pontchartrain owes the full balance of principal and interest to Foundation for Louisiana as set forth in the PRI.

31.

As part of the extension process, First NBC agreed to extend its right of offset against the CDs and allow Pontchartrain to identify and provide replacement collateral for Pontchartrain's construction loan. (Ex. "J").

32.

Pontchartrain agreed to provide sufficient replacement collateral to First NBC to eliminate First NBC's continuing assignment of Foundation for Louisiana's CDs. (Ex. "J").

33.

Upon information and belief, Pontchartrain has failed to provide the replacement collateral required by First NBC and as set forth in the Extension Letters.

34.

First NBC has refused or failed to release Foundation for Louisiana's CDs.

35.

Pursuant to the PRI, Pontchartrain is indebted to Foundation for Louisiana in the amount of $500,000, plus interest in the amount of $79,637.04 as of March 9, 2015.

36.

Pontchartrain is in breach of its agreement with Foundation for Louisiana, including the PRI, Extension Letters and Promissory Note.

37.

Accordingly, Foundation for Louisiana prays for the relief requested below.

**WHEREFORE**, Petitioner, Foundation for Louisiana, formerly known as Louisiana Disaster Recovery Foundation, Inc. prays that:

1. a Citation be issued herein to Defendants, Pontchartrain Park CDC Real Estate Holdings, LLC and First NBC, along with a copy of this Petition; and

2. a judgment be entered in favor of Foundation for Louisiana, declaring that the Term of the Assignment has expired and that under the mandatory terms and conditions of the Assignment, First NBC must release Certificate of Deposit Number 34884 and Certificate of Deposit Number 34885 to the Foundation for Louisiana ; and

3. after all applicable delays have elapsed and due proceedings are had, a judgment be issued in favor of the Foundation for Louisiana and against Pontchartrain Park CDC, declaring that the amount of the accrued and unpaid interest as of March 9, 2015 is $79,637.04, plus interest until paid and attorney fees and costs, that such amount is presently due, and ordering Pontchartrain Park CDC to pay such amount to the Foundation for Louisiana; or

4. alternatively, a judgment be issued in favor of the Foundation for Louisiana and against Pontchartrain Park CDC declaring that Ponthcartrain Park CDC has

breached the PRI and Promissory Note and therefore must pay the Foundation for Louisiana $500,000, plus interest in the amount of $79,637.04 as of March 9, 2015, plus interest until paid and attorney fees and costs; and

5. for such other further relief to which it may be entitled in law and equity.

Respectfully submitted:

ADAMS AND REESE LLP

By: ______________________
Patricia B. McMurray, Bar #17703
Marshall A. Hevron, Bar #32501
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 585-0242
Facsimile: (504) 566-0210

*Attorneys for Foundation for Louisiana, formerly known as Louisiana Disaster Recovery Foundation, Inc.*

**Please serve Petition:**

Pontchartrain Park CDC Real Estate Holdings, LLC
Through its Registered Agent
William Aaron, Jr.
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170

First NBC Bank
Through its Registered Agent
Marsha S. Crowle
210 Baronne Street
New Orleans, LA 70112

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

FILED 2015 MAR 11 P 3:30

LOUISIANA DISASTER RECOVERY FOUNDATION
Louisiana's Fund for Louisiana's People

BOARD OF DIRECTORS

Ambassador James Joseph, *Chairman*
C. Berwick Duval, II, J.D., *Vice Chairman*
John R. Redd, III, CPA, *Secretary and Treasurer*
Brenda Stewart Birkett, Ph.D.
E. Renae Conley, MBA
Julio Galan
Linetta J. Gilbert
Sibal S. Holt
Lieutenant General Russel Honoré
R. King Milling

*The Mission* of LDRF is to transform the disaster caused by hurricanes Katrina and Rita into an unprecedented opportunity for a new Louisiana – providing resources for the relief, recovery, and betterment of all its people by ensuring access and opportunity in rebuilding their communities and culture.

5354 S. Sherwood Forest Blvd. Suite 200
Baton Rouge, Louisiana 70816

PHONE (225) 383-1672 FAX (225) 383-1858

TOLL FREE 1-877-HELPLA (1-877-435-7521)

December 8, 2009

PRI Agreement Number: 20090139

Mr. Wendell Pierce
Pontchartrain Park CDC Real Estate Holdings, LLC
1010 Common Street, Ste. 2510
New Orleans, LA 70112

Dear Mr. Pierce:

We are pleased to inform you that the Louisiana Disaster Recovery Foundation (Foundation) Board of Directors has taken action to approve a $500,000.00 Program Related Investment (PRI) to support the Pontchartrain Park redevelopment project by providing collateral to help secure the Pontchartrain Park CDC Real Estate Holdings, LLC ("PPCDC Holdings") construction loan.

This PRI to PPCDC Holdings is intended for use as described in your application to LDRF as collateral to secure a $3.2 million construction loan from Dryades Bank and First NBC Bank. The construction loan from these banks will be used by PPCDC Holdings to build homes in the Pontchartrain Park neighborhood that will replace homes damaged or destroyed by Hurricane Katrina.

To close the construction loan(s), LDRF will purchase two $250,000.00 Certificates of Deposit (CD) at Dryades Bank and First NBC Bank in the name of LDRF and pledge the CDs as collateral against the PPCDC Holdings construction loan(s).

The term of the PRI will be the earlier of either (a) 12 months from the date of deposit or (b) after the construction and sale of the first ten (10) homes. The interest payable to LDRF by PPCDC for the PRI collateral shall be at a simple interest rate of 3% per year.

Additionally, as PPCDC and its development partners construct and sell homes, PPCDC agrees to place $10,000 from each sale into a loan guarantee escrow account as collateral. At the end of the term, the CDs will be withdrawn and cashed out by LDRF and the interest payable will be due and payable to LDRF from PPCDC within 30 days. Further conditions are enclosed with the attached Terms and Conditions.

Landon Williams will be the Foundation staff person responsible for the management of this PRI.

**Description of Work and Products**

- The PRI will be used to secure a $3.2 million construction loan.

EXHIBIT
A



- PPCDC Holdings will construct and sell ten (10) homes in the Pontchartrain Park neighborhood.

**Payment Provisions**
Based on the approved budget, the Foundation agrees to guarantee PPCDC Holdings' construction loan with a $500,000.00 PRI.

The PRI will be disbursed in one payment by LDRF securing two (2) Certificates of deposit at Dryades and First NBC banks upon LDRF's receipt and approval of an original copy of this executed Letter of Agreement and PPCDC Holdings' executed and notarized Promissory Note.

**Reporting Requirements**

PPCDC Holdings agrees to submit progress reports to LDRF as it completes phase one constructing three model/ spec homes; and phase two constructing an additional seven (7) homes.

PPCDC Holdings will also submit a Final Report to LDRF by October 31, 2010 using the attached reporting forms.

I hope you find the terms of this PRI acceptable. Please indicate this by signing below and returning the complete original Letter of Agreement to the Foundation's office.

On behalf of the Louisiana Disaster Recovery Foundation, I look forward to our working relationship for Louisiana's people.

Sincerely,

Ashley K. Shelton
Vice President for Programs

For Pontchartrain Park CDC Real Estate Holdings, LLC:

It's Sole Member,
Pontchartrain Park Community Development Corporation

12-14-09
Wendell Pierce
President

Encl. Terms and Conditions
Promissory Note
Reporting Form

# TERMS AND CONDITIONS FOR THE LOUISIANA DISASTER RECOVERY FOUNDATION

1. All PRI and Grant funds must be used only for charitable purposes within the meaning of Internal Revenue Code Section 170(c) (2)(B) and, more specifically, for the purpose described in the attached Agreement and substantially in accordance with the approved budget. The PRI funds may not be expended for any other purpose without the Foundation's prior written approval. The borrower must administer and disburse PRI funds in compliance with all applicable anti-terrorist financing and asset control laws, regulations, rules and executive order. Any funds not expended for the purpose of the PRI during the PRI term must be immediately returned to the Foundation.

2. In addition to other required reports specified elsewhere in this agreement, the borrower will provide a final report one month after the end of the PRI term. The report should include a narrative account of what was accomplished by the expenditure of funds and a financial statement attested by the responsible financial officer of the borrower or a certified public accountant.

    a. If the report is not received in a timely manner, the Foundation may withhold further payments until the report is received, and may terminate the Agreement as provided in the Promissory Note if the report is not received within thirty (30) days following the date on which it is due. .

    b. If the borrower is a private non-profit organization, its report shall also include: (i) a statement the borrower distributed the PRI funds as qualifying distributions (as defined in Section 4942 (g) of the Internal Revenue Code) by the end of the borrower's fiscal year following the fiscal year in which borrower received the PRI funds; (ii) the name, address and amount received by each organizations to which the borrower made a qualifying distribution of PRI funds: and (iii ) a statement that such qualifying distributions were distributions out of the corpus (as defined in Section 4942 (g) of the Code).

3. Although the PRI funds need not be maintained in a separate bank account, such funds must be shown on the borrower's books for case of reference and verification. Records of receipts and expenditures under the PRI, as well as copies of reports submitted to the Foundation, must be kept for at least four years following completion of the PRI terms. The borrower's books and records shall be made available for the Foundation's inspection at reasonable times for the purpose of making such financial audits, verifications or program evaluations as the Foundation deems necessary concerning the PRI.

4. The borrower should provide the Foundation with immediate notification of any changes in its tax exempt status as soon as it occurs.

5. No part of the PRI funds may be used:

a. to carry on propaganda, or otherwise attempt to influence legislation (within the meaning of Section 4945 (d)(1) of the Internal Revenue Code);

b. to influence the outcome of ay specific public election, or to carry on, directly or indirectly, any voter registration drive (within the meaning of Section 4945 (d)(2) of the Internal Revenue Code);

c. to make any disbursement which does not comply with the requirements of Section 4945 (d)(3) and (4) of the Internal Revenue Code;

d. to make disbursements to other organization which are not described in Section 59 (a)(1), (2) or (3) of the Internal Revenue Code; or

e. to make payments to any person or entity named in any list of suspected terrorists or blocked individuals promulgated by the U.S. government.

6. If the borrower is a publicly-supported non-profit organization, the borrower acknowledges that the PRI will not cause the borrower to lose its status as a public charity as described in Section 170(b)(1)(A) of the Code, and its determination letter from the Internal Revenue Service that the borrower is a public charity is still valid and has not been revoked.

7. If the borrower makes disbursements to 501(c) (3) organizations from the PRI, the borrower must: (a) inform the Foundation of the identities of sub-borrowers promptly after they are selected; (b) obtain accounting from each sub-borrowers and forward it to the Foundation directly; and (c) require that the sub-borrowers be subject to the same Terms and conditions imposed on the borrower by the Foundation. In addition, if the sub-borrower is a private foundation, the Terms and Conditions (including, in particular, paragraphs 2(b) and 5) shall apply as if PRI had been made directly by the Foundation to it.

8. If the borrower makes payments to individuals or non-501(c) (3) organizations, the borrower may enter into direct contracts with them so long as the goods and services provided to the borrower by the individuals/organizations further the purpose of the foundation's PRI to the borrower. In these cases, the borrower organization must: (a) incorporate the individual's accounting to the Foundation; (b) require that no part of the Foundation's PRI funds to these individuals/organizations be used to carry on propaganda, or otherwise to influence legislation, or the outcome of any specific public election, as detailed in paragraph 5 of these Terms and Conditions.

9. Any violation of the foregoing conditions will require refunding to the Foundation of any amounts subject to the violation. The Foundation may discontinue, modify or withhold any payments due under this PRI award or to require a refund of any unexpended PRI funds if, in its sole judgment, such action is necessary to comply with the requirements of any law of regulation affecting its responsibilities under this PRI award.

10. The State and Federal Courts located in Louisiana shall have exclusive jurisdiction over any dispute which might arise in connection with this PRI, and the laws of Louisiana shall govern the interpretation of the terms of the PRI.

The Louisiana Disaster Recovery Foundation

## Interim/Final Expenditure Report

Borrower: **Pontchartrain Park CDC Real Estate Holdings, LLC**

Agreement Number: **20090139**

Project Title:

Reporting Period: **Report Due On:**

| **Cost Category**** | **Annual Budget** [1] | **Expenditures for Period** [1] | **% of Annual Budget Expended to Date** |
|---|---|---|---|
| Personnel [2] | $ | $ | % |
| Fringe Benefits | | | |
| Travel | | | |
| Equipment | | | |
| Supplies/Office Expenses | | | |
| Subcontract [3] | | | |
| Consultants [3] | | | |
| Other Direct Costs | | | |
| | | | |
| Total Authorized Amount | | $ | % |

** The Expenditure Report categories should reflect the approved PRI budget
(1) Expenditures and Budget for LDRF funds only
(2) Attach "Detailed Personnel Report"
(3) Attach addendum stating organization(s), purpose(s), duration and cost(s), rate(s)

Name of Project Director Signature Date

Name of Authorized Financial Personnel Signature Date

The Louisiana Disaster Recovery Foundation
**Interim/Final Key Personnel Report**

Borrower: **Pontchartrain Park CDC Real Estate Holdings, LLC**

Agreement Number: 20090139

Project Title:

Reporting Period: **Report Due On:**

| Name (1) | Title | Total Annual Salary | Fringe Benefits | % Time on PRI Activity (2) | Expenditures for Period |
|---|---|---|---|---|---|
| | | $ | $ | % | $ |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | Subtotals | $ | $ | % | $ |

(1) Key personnel should reflect principals named in PRI application
(2) If a person is not employed during the entire reporting period, please indicate the dates employed.

# The Louisiana Disaster Recovery Foundation
# Interim/Final Progress Report

Borrower: Pontchartrain Park CDC Real Estate Holdings, LLC

Agreement Number: 20090139

Project Title:

Reporting Period: Report Due On:

**Objectives**

What particular needs did you address with this PRI? Areas of need include affordable housing, small business recovery, jobs, economic success, other.

What was the need for the service, program or project? How did this PRI support direct recovery of families, individuals, small businesses and/or organizations affected by hurricane Katrina?

How did this service, project or program satisfy these needs? Please be specific. Include:

- Number of families or individuals served
- Levels of activity that was undertaken (for example: grants or loans provided, small businesses management or technical assistance, referrals to other organizations, houses/apartments rehabilitated or constructed, supervision and/or lodging of volunteers, etc.)
- Number of directly affected non-profits/ for profits assisted/ stabilized or re-opened for business
- Number of jobs retained or increased
- Number of units of housing re-occupied, rehabbed, or built
- Etc.

What are the demographics of the population that you served (income, gender, ethnicity, senior citizens, disabled)?

What was the geographic scope of the service, project or program (city, neighborhood, parish)? Please describe.

What were the activities and results to date?

What were the major problems/obstacles?

What are the planned activities for the next reporting period (interim reporting only)?

# ASSIGNMENT OF DEPOSIT ACCOUNT

**Borrower:** PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC
1010 COMMON STREET, SUITE 2510
NEW ORLEANS, LA 70112

**Lender:** FIRST NBC BANK
MAIN OFFICE
210 BARONNE STREET
NEW ORLEANS, LA 70112

**Grantor:** LOUISIANA DISASTER RECOVERY FOUNDATION, INC.
4354 SOUTH SHERWOOD FOREST BLVD., SUITE 200
BATON ROUGE, LA 70816

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated March 12, 2010, is made and executed among LOUISIANA DISASTER RECOVERY FOUNDATION, INC. ("Grantor"); PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC ("Borrower"); and FIRST NBC BANK ("Lender").

ASSIGNMENT. For valuable consideration, Grantor assigns and grants to Lender a continuing security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" means the following described deposit accounts ("Account"):

FIRST NBC BANK CERTIFICATE OF DEPOSIT NUMBER 20598 WITH AN APPROXIMATE BALANCE OF $250,000.00

DRYADES SAVINGS BANK CERTIFICATE OF DEPOSIT NUMBER 929 WITH AN APPROXIMATE AMOUNT OF $250,000.00

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

ASSIGNMENT OF ACCOUNT. Grantor hereby grants Lender a continuing security interest in the above-described Account and other Collateral to secure the prompt and punctual payment and satisfaction of the Indebtedness.

CONTINUING SECURITY INTEREST TO SECURE PRESENT AND FUTURE INDEBTEDNESS. Grantor affirms that Grantor has granted a continuing security interest in the Collateral in favor of Lender to secure any and all of Borrower's and Grantor's present and future Indebtedness in favor of Lender, as may be outstanding from time to time set forth above, in principal, interest, costs, expenses, reasonable attorneys' fees and other fees and charges, with the continuing preferences and priorities provided under applicable Louisiana law.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

DEPOSIT ACCOUNTS. As collateral security for repayment of the Indebtedness and all renewals and extensions.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

**Ownership.** Grantor is and will continue to be the lawful owner of the Collateral free and clear of all liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign and pledge the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Borrower will pay all filing fees, continuation fees, termination fees, title transfer fees, and other fees and costs involved. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a carbon, photographic, facsimile or other reproduction copy of this Agreement as a UCC financing statement. Lender may also file a carbon, photographic, facsimile or other reproduction copy of Grantor's UCC financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**Additional Covenants.** As long as this Agreement remains in effect, Grantor agrees not to:

**No Further Transfer.** Sell, assign, encumber, compromise, dispose of, or in any way impair any rights under the Account.

**No Withdrawals.** Withdraw or attempt to withdraw funds from, or otherwise obtain payment on the Account.

LENDER'S RIGHTS. Grantor agrees that Lender shall have the following rights in addition to all other legal rights available to Lender:

**Liens.** Lender may at Lender's sole discretion take any action(s) that Lender deems to be necessary or desirable to protect, maintain, insure, or satisfy any liens or other claims that may be asserted against the Collateral.

**Account Renewals.** As long as this Agreement remains in effect, Lender may, from time to time, one or more times, renew the Account for a similar term and at then offered interest rate(s). Lender may further add and include then accrued interest to the principal amount of such renewal Account.

EXPENDITURES BY LENDER. Borrower recognizes and agrees that Lender may incur certain expenses in connection with Lender's exercise of rights under this Agreement. Borrower agrees to reimburse Lender for such expenses (including Lender's reasonable attorneys' fees), which shall be repayable on a demand basis with interest at the rate provided under the Note from the date of each such expenditure until Lender is repaid in full.

LIMITATIONS ON OBLIGATIONS OF LENDER. Grantor agrees that Lender is required to use only ordinary reasonable care in the physical preservation and custody of any certificate or passbook evidencing the Account, with Lender having no greater obligation whatsoever to protect such Account or its value.

EVENTS OF DEFAULTS. The following actions or inactions or both shall constitute Events of Default under this Agreement:

**Default Under the Note.** Should Borrower or Grantor default in the payment of principal or interest under the Note or any of the Indebtedness.

**Default Under this Agreement.** Should Grantor violate, or fail to comply fully with any of the terms and conditions of, or default under this Agreement.

**Default Under other Agreements.** Should any default occur or exist under any Related Document which directly or indirectly secures repayment of any of the Indebtedness.

**Other Defaults in Favor of Lender.** Borrower, Grantor, or any guarantor defaults under any other loan, extension of credit, security right, instrument, document, or agreement, or obligation in favor of Lender.

**Insolvency.** Should the suspension, failure or insolvency, however evidenced, of Borrower or any Guarantor occur or exist.

**Readjustment of Indebtedness.** Should proceedings for readjustment of indebtedness, reorganization, composition or extension under any insolvency law be brought by or against Borrower or any Guarantor.

**Assignment for Benefit of Creditors.** Should Borrower or any Guarantor file proceedings for a respite or make a general assignment for the benefit of creditors.

**Receivership.** Should a receiver of all or any part of Borrower's property, or the property of any Guarantor, be applied for or appointed.

**Dissolution Proceedings.** Proceedings for the dissolution or appointment of a liquidator of guarantor are commenced.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf, the Note, is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insecurity.** Lender in good faith believes itself insecure with regard to repayment of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Borrower to Lender immediately due and payable, without notice of any kind to Borrower or Grantor.

**Application of Account Proceeds.** Lender may close the Account and apply any proceeds derived from the payment of such Account (after deducting, where applicable, any early withdrawal penalty imposed by Lender, first to reimbursement of Lender's expenses as provided under this Agreement, and then to the payment in whole or in part of the Indebtedness, in such order and priorities as Lender may determine within its sole discretion.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.), even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement, at law or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Agreement or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**Lender's Rights of Offset.** Lender's rights under this Agreement are in addition to any statutory rights of offset granted to Lender under applicable Louisiana law, as well as any contractual security agreement provided under any note, credit or deposit agreement that Grantor may now and/or in the future have with Lender.

**EFFECT OF WAIVERS.** Grantor hereby waives presentment for payment, protest and notice of protest and of nonpayment, and all pleas of division and discussion, in connection with any and all of the Indebtedness subject to this Agreement. Grantor further agrees that discharge or release of any party or other collateral securing the Indebtedness, extension of time for payment, or any delay in enforcing any rights granted to Lender, will not cause Lender to lose any of its rights under this Agreement or under the Indebtedness. Grantor further waives any defenses that may arise because of any action or inaction on the part of Lender, including, without limitation, any failure or delay of Lender to exercise or enforce any of its rights under this Agreement. Grantor additionally agrees that any waiver or forbearance on the part of Lender shall be binding upon Lender only if agreed to in writing by a duly authorized representative of Lender.

**FURTHER COVENANTS.** Grantor further represents, warrants and agrees that: (A) Grantor has agreed and consented to grant the security interest provided herein to secure payment of Borrower's Indebtedness in favor of Lender at Borrower's request and not at the request of Lender; (B) Grantor will receive and/or has received a direct or indirect material benefit from the transactions contemplated herein and/or arising out of Borrower's Indebtedness; (C) Grantor has established adequate means of obtaining information from Borrower on a continuing basis with regard to Borrower's financial condition; and (D) Lender has made no representations to Grantor as to the creditworthiness of Borrower. Grantor agrees to keep adequately informed of any facts, events or circumstances which might in any way affect Grantor's risks with regard to Borrower's Indebtedness. Grantor further agrees that Lender shall have no obligation to disclose to Grantor any information or material relating to Borrower's Indebtedness.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** No amendment, modification, consent or waiver of any provision of this Agreement, and no consent to any departure by Grantor therefrom, shall be effective unless the same shall be in writing signed by a duly authorized officer of Lender, and then shall be effective only as to the specific instance and for the specific purpose for which given.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the Indebtedness and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** **This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Louisiana without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Louisiana.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**Notices.** To give Grantor any notice required under this Agreement, Lender may hand deliver or mail the notice to Grantor at Grantor's last address in Lender's records. To give Lender any notice under this Agreement, Grantor (or any Grantor) shall mail the notice to Lender by registered or certified mail at the address specified in this Agreement, or at any other address that Lender may have given to Grantor by written notice as provided in this section. All notices required or permitted under this Agreement must be in writing and will be considered as given on the day it is delivered by hand or deposited in the U.S. Mail as provided herein.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or

payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and. (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable. This Agreement shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and legal, valid and enforceable.

**Successors and Assigns Bound; Solidary Liability.** Subject to any limitations set forth herein on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, and their successors and assigns. In the event that there is more than one Grantor under this Agreement, all of the agreements and obligations made and/or incurred by any Grantor under this Agreement shall be on a "solidary" or "joint and several" basis.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall survive the termination of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Louisiana Commercial Laws (La. R.S. 10: 9-101, et seq.):

**Account.** The word "Account" means the deposit accounts described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached or to be attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means LOUISIANA DISASTER RECOVERY FOUNDATION, INC..

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, and any renewal or extension thereof in principal, interest, costs, expenses and attorneys' fees and all other fees and any other applicable fees or costs and charges together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means FIRST NBC BANK, its successors and assigns, and any subsequent holder or holders of the Note or any interest therein.

**Note.** The word "Note" means the Note executed by PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC in the **principal amount of $300,000.00 dated March 12, 2010,** together with all renewals, increases, extensions, modifications, refinancings, consolidations and substitutions of and for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Term.** Anything herein to the contrary notwithstanding, this Agreement is effective for a period (the "TERM") limited to (a) one (1) year from the date hereof or (b) the construction of the first ten (10) homes, whichever comes first. Unless the Grantor should in writing extend its assignment of the Account, upon expiration of the Term, the Account shall cease to be collateral for, and shall not secure any indebtedness of Borrower to Lender, and to the extent not previously applied to the Indebtedness, the Account shall be returned to Grantor at that time. It is further understood that Grantor shall have no financial obligation under this Agreement, its sole obligation being the delivery of the assignment of the Account as security for the Indebtedness for the Term of the Agreement."

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 12, 2010.

**GRANTOR:**

LOUISIANA DISASTER RECOVERY FOUNDATION, INC.

By: ______________________
FLOZELL DANIELS, JR., PRESIDENT/CEO of LOUISIANA DISASTER RECOVERY FOUNDATION, INC.

**BORROWER:**

PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC

PONTCHARTRAIN PARK COMMUNITY DEVELOPMENT CORPORATION, MEMBER of PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC

By: ______________________
WENDELL PIERCE, PRESIDENT of PONTCHARTRAIN PARK COMMUNITY DEVELOPMENT CORPORATION

LASER PRO Lending, Ver. 5.46.10.002 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - LA [illegible]

# ACKNOWLEDGMENT OF ASSIGNMENT OF DEPOSIT ACCOUNT

**Borrower:** PONTCHARTRAIN PARK CDC REAL ESTATE HOLDINGS, LLC
1010 COMMON STREET, SUITE 2510
NEW ORLEANS, LA 70112

**Grantor:** LOUISIANA DISASTER RECOVERY FOUNDATION, INC.
4354 SOUTH SHERWOOD FOREST BLVD.
SUITE 200
BATON ROUGE, LA 70816

**Lender:** FIRST NBC BANK
MAIN OFFICE
210 BARONNE STREET
NEW ORLEANS, LA 70112

## NOTICE TO ISSUING INSTITUTION

TO: DRYADES SAVINGS BANK

March 12, 2010

**RE:**

**Account Description:** DRYADES SAVINGS BANK CERTIFICATE OF DEPOSIT NUMBER 929 WITH AN APPROXIMATE AMOUNT OF $250,000.00

**Owners of Account:** LOUISIANA DISASTER RECOVERY FOUNDATION, INC.

**Approximate Amount:** $250,000.00

DEAR MADAM OR SIR:

We, FIRST NBC BANK, have been given as collateral security an assignment of the above described deposit account, including interest thereon, increases thereto and renewals and extensions thereof, issued by your institution ("Account"). You are hereby notified of this assignment, including the provision that the Account is not to be paid to anyone other than to us until and unless you receive further notice from us. We are also requesting that you subordinate to us any right of offset, setoff, and any other security interest that you may have with regard to the above described Account. This assignment will remain in full force and effect through the term of the Assignment Agreement. Would you please acknowledge receipt of this notice by signing and returning the attached acknowledgment. This notice is dated March 12, 2010.

LENDER:

FIRST NBC BANK

X ______________________________
Authorized Officer

ACCOUNT OWNER AUTHORIZATION:

LOUISIANA DISASTER RECOVERY FOUNDATION, INC

By: ______________________________
FLOZELL DANIELS, JR., PRESIDENT/CEO of LOUISIANA DISASTER RECOVERY FOUNDATION, INC.

## ACKNOWLEDGMENT OF ASSIGNMENT

We acknowledge receipt on ____________________, 20____ of your notice of assignment of the above-described Account.

The balance in the Account as of that date was $____________________. We have received no other notice of assignment or claim concerning the uncertificated Account, and we will mark our records to register the assignment of the Account in your favor. We agree to pay the proceeds of the Account to you upon your request and hereby waive all claims, defenses, and right of offset we may have or acquire with reference to the Account unless and until you shall notify us in writing that such assignment has been released.

We are further subordinating to you any right of offset or setoff and any other other security interest that we may have with regard to the Account.

DRYADES SAVINGS BANK:

By: ______________________________
Authorized Signer

LASER PRO Lending, Ver. 5.48.30.002 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - LA

RETURN TO:

FIRST NBC BANK
MAIN OFFICE
210 BARONNE STREET
NEW ORLEANS, LA 70112



LOUISIANA DISASTER
RECOVERY FOUNDATION
Louisiana's Fund for Louisiana's People

February 11, 2011

Wendell Pierce, President
Pontchartrain Park Community Development Corporation
1010 Common St., Suite 2550
New Orleans, Louisiana 70112

Mr. Pierce:

In March 2010, The Louisiana Disaster Recovery Foundation ("LDRF") funded a Program Related Investment ("PRI") in the amount of $500,000 to Pontchartrain Park Community Development Corporation ("PPCDC") to help capitalize, in the form of a loan guarantee, PPCDC's residential home development project. The construction lender for the project was Dryades Bank ("Lender"). The term of this PRI was one year at 3% interest. The PRI was disbursed as two $250,000 Certificates of Deposit ("CD"), housed at Dryades and FNBC banks respectively and pledged as collateral against the construction loan. These CDs are set to mature on March 15, 2011. During the term of this PRI, PPCDC was to develop a minimum of 10 homes in the Pontchartrain Park neighborhood of New Orleans.

To date, PPCDC has developed two homes and is in the process of developing an additional eight properties. LDRF understands that the project experienced numerous delays, resulting in a lower than expected number of completed homes. LDRF remains committed to supporting the PPCDC development project. As a result, LDRF will extend the term of the PRI for an additional six-months with the new term ending on September 30, 2011.

LDRF's commitment to modifying the terms and conditions of the existing $500,000 PRI is conditioned upon the following key points:

1. The Lender agrees to extend its offset provision for an additional six month term, allowing PPCDC to identify and provide replacement collateral for the construction loan

2. PPCDC agrees to provide sufficient replacement collateral by or before August 31, 2011, which is (30) thirty days prior to the end of the LDRF six month collateral extension.

PPCDC is expected to submit LDRF the requested project performance reports (including home construction updates, home sales updates, identification of additional collateral sources, etc.) on a monthly basis.

EXHIBIT
C



LOUISIANA DISASTER
RECOVERY FOUNDATION
Louisiana's Fund for Louisiana's People

If you find the revised terms acceptable, LDRF will amend the pledge agreement and execute the documents accordingly.

Thank You,

Eric D. Shaw
Vice President of Programs and Policy

September 13, 2011

First NBC Bank
Main Office
Attention: Ashton J. Ryan, Jr.
210 Baronne Street
New Orleans, Louisiana 70112

RE: Loan to Pontchartrain Park CDC Real Estate Holdings, LLC ("Borrower")
By First NBC Bank ("Lender")
Security Provided by Foundation for Louisiana, formerly Louisiana Disaster Recovery Foundation, Inc. ("Grantor")

Dear Mr. Ryan:

Reference is hereby made to that certain Assignment of Deposit Account dated January 7, 2011 (the "Assignment") through which Louisiana Disaster Recovery Foundation, Inc. ("Grantor") pledged and granted a security interest in the following accounts (the "Account"):

First NBC Bank Certificate of Deposit Number 20598 with a current balance of $255,050.19

First NBC Bank Certificate of Deposit Number 990929 (previously certificate no. 929) with a current balance of $256,407.63

As you know, the Account was previously renewed and extended through and until September 14, 2011. This will confirm that Grantor has consented to a further renewal and extension of the Account for a six month time period through March 14, 2012 (the "Extended Maturity Date"). Additionally, Grantor desires to extend the continued validity and effectiveness of the Assignment through and including the Extended Maturity Date.

This will further acknowledge and confirm that the Grantor has changed it name to Foundation for Louisiana and that Foundation for Louisiana is the successor by name change to Louisiana Disaster Recovery Foundation, Inc.

In order to implement the intent of this letter agreement, Grantor and the Borrower request that certain portions of the Assignment be modified, amended and restated with the consent of Lender as follows:

**LENDER OFFSET RIGHTS.** Grantor and Borrower acknowledge that the Collateral which consists of certificates of deposit shall mature on March 14, 2012 ("Extended Maturity Date"). Notwithstanding anything to the contrary in this Agreement, unless Borrower shall have previously provided Lender in Lender's sole and absolute discretion, with satisfactory substitute



or replacement collateral, Lender shall offset the Collateral and apply such proceeds against the Indebtedness at any time prior to the Extended Maturity Date. Borrower shall submit any proposed substitute or replacement collateral sufficiently prior to the Extended Maturity Date so that Lender may perform any necessary appraisals, title work, or other due diligence. The replacement collateral must be fully and validly completed, executed, and perfected prior to March 9, 2012 or the Lender shall proceed with the offset.

**CERTIFICATE OF DEPOSIT TERM PROVISION.** Anything herein to the contrary notwithstanding except those terms and provisions in the Lender Offset Rights section herein, this Agreement is effective for a period (the "TERM") limited to an additional six (6) month period ending on the Extended Maturity Date as established herein.

All other terms, conditions and provisions of the Assignment shall remain in full force and effect except to the extent expressly modified herein.

If the terms of this letter agreement meet with your approval, please evidence your acceptance by signing below.

Sincerely,
Foundation for Louisiana, successor by name change to Louisiana Disaster Recovery Foundation, Inc.

By: ______________________
Flozell Daniels, Jr., President/CEO

ACKNOWLEDGED AND ACCEPTED:

First NBC Bank

By: ______________________
Ashton J. Ryan, Jr.
Its: President and CEO

Pontchartrain Park Community Development Corporation

By: ______________________
Edward Morris
Its: Secretary/Treasurer

Pontchartrain Park CDC
Real Estate Holdings, LLC
By: Pontchartrain Park Community Development Corporation
Its: Managing Member

By: ______________________
Edward Morris
Its: Secretary/Treasurer



June 14, 2012

First NBC Bank
Ashton J. Ryan, Jr.
President & CEO
210 Baronne Street
New Orleans, Louisiana  70112

RE:   Loan to Pontchartrain Park CDC Real Estate Holdings, LLC ("Borrower")
      By First NBC Bank ("Lender")
      Security Provided by Foundation for Louisiana, formerly Louisiana Disaster Recovery
      Foundation, Inc. ("Grantor")

Dear Mr. Ryan:

Reference is hereby made to that certain Assignment of Deposit Account dated January 7, 2011 (the "Assignment") through which Louisiana Disaster Recovery Foundation, Inc. ("Grantor") pledged and granted a security interest in the following accounts (collectively the "Account"):

First NBC Bank Certificate of Deposit Number 20598 with a current balance of $250,000.00

First NBC Bank Certificate of Deposit Number 990929 (previously certificate no. 929) with a current balance of $250,000.00

As you know, the Account was previously renewed and extended through and until June 14, 2012. This will confirm that Grantor has consented to a further renewal and extension of the Account for a one (1) month time period through July 14, 2012 (the "Extended Maturity Date"); provided, however, that Borrower shall proceed with the Replacement Collateral Approval Process (defined below) on a due and diligent basis within the next thirty (30) days from the date of this letter agreement.    Additionally, Grantor desires to extend the continued validity and effectiveness of the Assignment through and including the Extended Maturity Date.

For the purposes of this letter agreement, the term "Replacement Collateral Approval Process" shall mean the anticipated proposal to Lender by Borrower of approximately seventy (70) lots as replacement collateral. Upon Borrower's formal submittal of the lots as replacement collateral, Lender shall proceed with its customary due diligence for the evaluation and approval of such replacement collateral. Such Lender due diligence may include, without limitation, any necessary appraisals or title work in Lender's sole discretion. Lender confirms its intention to



release the Account from the pledge upon the establishment of a sufficient valuation of the lots and completion of other due diligence for replacement collateral purposes. Notwithstanding the foregoing, Lender shall be under no obligation to approve the replacement collateral if such collateral fails to meet Lender's ordinary underwriting guidelines for real estate collateral.

This will further acknowledge and confirm that the Grantor has changed it name to Foundation for Louisiana and that Foundation for Louisiana is the successor by name change to Louisiana Disaster Recovery Foundation, Inc.

In order to implement the intent of this letter agreement, Grantor and the Borrower request that certain portions of the Assignment be modified, amended and restated with the consent of Lender as follows:

**LENDER OFFSET RIGHTS.** Grantor and Borrower acknowledge that the Collateral which consists of certificates of deposit shall mature on July 14, 2012 ("Extended Maturity Date"). Notwithstanding anything to the contrary in this Agreement, unless Borrower shall have previously provided Lender in Lender's sole and absolute discretion, with satisfactory substitute or replacement collateral, Lender shall offset the Collateral and apply such proceeds against the Indebtedness at any time prior to the Extended Maturity Date. Borrower shall submit any proposed substitute or replacement collateral sufficiently prior to the Extended Maturity Date so that Lender may perform any necessary appraisals, title work, or other due diligence. The replacement collateral must be fully and validly completed, executed, and perfected prior to July 7, 2012 or the Lender shall proceed with the offset.

**CERTIFICATE OF DEPOSIT TERM PROVISION.** Anything herein to the contrary notwithstanding except those terms and provisions in the Lender Offset Rights section herein, this Agreement is effective for a period (the "TERM") limited to an additional one (1) month period ending on the Extended Maturity Date as established herein.

All other terms, conditions and provisions of the Assignment shall remain in full force and effect except to the extent expressly modified herein.

If the terms of this letter agreement meet with your approval, please evidence your acceptance by signing below.

Sincerely,
Foundation for Louisiana, successor by name change to
Louisiana Disaster Recovery Foundation, Inc.

By:____________________________
Flozell Daniels, Jr., President/CEO

Page 2
June 14, 2012

ACKNOWLEDGED AND ACCEPTED:

First NBC Bank

By: [signature]
Ashton J. Ryan, Jr.
Its: President & CEO

Pontchartrain Park Community Development Corporation

By:______________________
Edward Morris
Its: Secretary/Treasurer

Pontchartrain Park CDC
Real Estate Holdings, LLC
By: Pontchartrain Park Community Development Corporation
Its: Managing Member

By:______________________
Edward Morris
Its: Secretary/Treasurer



Foundation
for Louisiana
At work for resilient communities.

July 13, 2012

First NBC Bank
Ashton J. Ryan, Jr.
President & CEO
210 Baronne Street
New Orleans, Louisiana 70112

RE: Loan to Pontchartrain Park CDC Real Estate Holdings, LLC ("Borrower")
By First NBC Bank ("Lender")
Security Provided by Foundation for Louisiana, formerly Louisiana Disaster Recovery Foundation, Inc. ("Grantor")

Dear Mr. Ryan:

Reference is hereby made to that certain Assignment of Deposit Account dated January 7, 2011 (the "Assignment") through which Louisiana Disaster Recovery Foundation, Inc. ("Grantor") pledged and granted a security interest in the following accounts (collectively the "Account"):

First NBC Bank Certificate of Deposit Number 20598 with a current balance of $250,000.00

First NBC Bank Certificate of Deposit Number 990929 (previously certificate no. 929) with a current balance of $250,000.00

As you know, the Account was previously renewed and extended through and until July 14, 2012. This will confirm that Grantor has consented to a further renewal and extension of the Account through December 31, 2012 (the "Extended Maturity Date"); provided, however, that Borrower shall proceed with the Replacement Collateral Approval Process (defined below) on a due and diligent basis within the next thirty (30) days from the date of this letter agreement. Additionally, Grantor desires to extend the continued validity and effectiveness of the Assignment through and including the Extended Maturity Date.

For the purposes of this letter agreement, the term "Replacement Collateral Approval Process" shall mean the anticipated proposal to Lender by Borrower of approximately seventy

EXHIBIT
F



Foundation
for Louisiana

At work for resilient communities.

(70) lots as replacement collateral. Upon Borrower's formal submittal of the lots as replacement collateral, Lender shall proceed with its customary due diligence for the evaluation and approval of such replacement collateral. Such Lender due diligence may include, without limitation, any necessary appraisals or title work in Lender's sole discretion. Lender confirms its intention to release the Account from the pledge upon the establishment of a sufficient valuation of the lots and completion of other due diligence for replacement collateral purposes. Notwithstanding the foregoing, Lender shall be under no obligation to approve the replacement collateral if such collateral fails to meet Lender's ordinary underwriting guidelines for real estate collateral.

This will further acknowledge and confirm that the Grantor has changed it name to Foundation for Louisiana and that Foundation for Louisiana is the successor by name change to Louisiana Disaster Recovery Foundation, Inc.

In order to implement the intent of this letter agreement, Grantor and the Borrower request that certain portions of the Assignment be modified, amended and restated with the consent of Lender as follows:

**LENDER OFFSET RIGHTS.** Grantor and Borrower acknowledge that the Collateral which consists of certificates of deposit shall mature on December 31, 2012 ("Extended Maturity Date"). Notwithstanding anything to the contrary in this Agreement, unless Borrower shall have previously provided Lender in Lender's sole and absolute discretion, with satisfactory substitute or replacement collateral, Lender shall offset the Collateral and apply such proceeds against the Indebtedness at any time prior to the Extended Maturity Date. Borrower shall submit any proposed substitute or replacement collateral sufficiently prior to the Extended Maturity Date so that Lender may perform any necessary appraisals, title work, or other due diligence. The replacement collateral must be fully and validly completed, executed, and perfected prior to December 15, 2012 or the Lender shall proceed with the offset.

**CERTIFICATE OF DEPOSIT TERM PROVISION.** Anything herein to the contrary notwithstanding except those terms and provisions in the Lender Offset Rights section herein, this Agreement is effective for a period (the "TERM") limited to the period ending on the Extended Maturity Date as established herein.

All other terms, conditions and provisions of the Assignment shall remain in full force and effect except to the extent expressly modified herein.



Foundation for Louisiana
At work for resilient communities.

If the terms of this letter agreement meet with your approval, please evidence your acceptance by signing below.

Sincerely,
Foundation for Louisiana, successor by name change to
Louisiana Disaster Recovery Foundation, Inc.

By: ________________________________
Flozell Daniels, Jr., President/CEO

ACKNOWLEDGED AND ACCEPTED:

First NBC Bank

By: ________________________________
Ashton J. Ryan, Jr.
Its: President & CEO

Pontchartrain Park Community Development Corporation

By: ________________________________
Edward Morris
Its: Secretary/Treasurer

Pontchartrain Park CDC

Real Estate Holdings, LLC
By: Pontchartrain Park Community Development Corporation
Its: Managing Member

By: ________________________________
Edward Morris
Its: Secretary/Treasurer



Foundation for Louisiana
At work for resilient communities.

December 21, 2012

First NBC Bank
Ashton J. Ryan, Jr.
President & CEO
210 Baronne Street
New Orleans, Louisiana 70112

RE: Loan to Pontchartrain Park CDC Real Estate Holdings, LLC ("Borrower")
By First NBC Bank ("Lender")
Security Provided by Foundation for Louisiana, formerly Louisiana Disaster Recovery Foundation, Inc. ("Grantor")

Dear Mr. Ryan:

Reference is hereby made to that certain Assignment of Deposit Account dated July 7, 2012 (the "Assignment") through which Foundation for Louisiana ("Grantor") pledged and granted a security interest in the following accounts (collectively the "Account"):

First NBC Bank Certificate of Deposit Number 34884 with a current balance of $250,000.00

First NBC Bank Certificate of Deposit Number 34885 with a current balance of $250,000.00

As you know, the Account was previously renewed and extended through and until December 31, 2012. This will confirm that Grantor has consented to a further renewal and extension of the Account for two three month automatic renewals through July 13, 2013 (the "Extended Maturity Date"); provided, however, that Borrower shall proceed with the Replacement Collateral Approval Process (defined below) on a due and diligent basis within the next thirty (30) days from the date of this letter agreement. Additionally, Grantor desires to extend the continued validity and effectiveness of the Assignment through and including the Extended Maturity Date.

For the purposes of this letter agreement, the term "Replacement Collateral Approval Process" shall mean the anticipated proposal to Lender by Borrower of approximately seventy (70) lots as replacement collateral. Upon Borrower's formal submittal of the lots as replacement collateral, Lender shall proceed with its customary due diligence for the evaluation and approval

4354 S. Sherwood Forest Blvd. Suite 200 • Baton Rouge, Louisiana 70816
Phone: (225) 383-1672 Toll-Free: 1-877-helplal (1-877-435-7521)

EXHIBIT
G

of such replacement collateral. Such Lender due diligence may include, without limitation, any necessary appraisals or title work in Lender's sole discretion. Lender confirms its intention to release the Account from the pledge upon the establishment of a sufficient valuation of the lots and completion of other due diligence for replacement collateral purposes. Notwithstanding the foregoing, Lender shall be under no obligation to approve the replacement collateral if such collateral fails to meet Lender's ordinary underwriting guidelines for real estate collateral.

This will further acknowledge and confirm that the Grantor has changed it name to Foundation for Louisiana and that Foundation for Louisiana is the successor by name change to Louisiana Disaster Recovery Foundation, Inc.

In order to implement the intent of this letter agreement, Grantor and the Borrower request that certain portions of the Assignment be modified, amended and restated with the consent of Lender as follows:

**LENDER OFFSET RIGHTS.** Grantor and Borrower acknowledge that the Collateral which consists of certificates of deposit shall mature on July 13, 2013 ("Extended Maturity Date"). Notwithstanding anything to the contrary in this Agreement, unless Borrower shall have previously provided Lender in Lender's sole and absolute discretion, with satisfactory substitute or replacement collateral, Lender shall offset the Collateral and apply such proceeds against the Indebtedness at any time prior to the Extended Maturity Date. Borrower shall submit any proposed substitute or replacement collateral sufficiently prior to the Extended Maturity Date so that Lender may perform any necessary appraisals, title work, or other due diligence. The replacement collateral must be fully and validly completed, executed, and perfected prior to July 7, 2012 or the Lender shall proceed with the offset.

**CERTIFICATE OF DEPOSIT TERM PROVISION.** Anything herein to the contrary notwithstanding except those terms and provisions in the Lender Offset Rights section herein, this Agreement is effective for a period (the "TERM") limited to two (2) additional three (3) month periods ending on the Extended Maturity Date as established herein.

All other terms, conditions and provisions of the Assignment shall remain in full force and effect except to the extent expressly modified herein.

If the terms of this letter agreement meet with your approval, please evidence your acceptance by signing below.

Sincerely,
Foundation for Louisiana, successor by name change to
Louisiana Disaster Recovery Foundation, Inc.

By:______________________________
Flozell Daniels, Jr., President/CEO

ACKNOWLEDGED AND ACCEPTED:

First NBC Bank

By:__________________________
Ashton J. Ryan, Jr.
Its: President & CEO

Pontchartrain Park Community Development Corporation

By:__________________________
Edward Morris
Its: Secretary/Treasurer

Pontchartrain Park CDC
Real Estate Holdings, LLC
By: Pontchartrain Park Community Development Corporation
Its: Managing Member

By:__________________________
Edward Morris
Its: Secretary/Treasurer



Foundation for Louisiana
At work for resilient communities.

August 27, 2013

Ashton J. Ryan, Jr.
President & CEO
First NBC Bank
210 Baronne Street
New Orleans, Louisiana 70112

RE: Loan to Pontchartrain Park CDC Real Estate Holdings, LLC ("Borrower")
By First NBC Bank ("Lender")
Security Provided by Foundation for Louisiana, formerly Louisiana Disaster Recovery Foundation, Inc. ("Grantor")

Dear Mr. Ryan:

I am writing in reference to the Assignment of Deposit Account dated July 7, 2012 (the "Assignment") through which Foundation for Louisiana ("Grantor") pledged and granted a security interest in the following accounts (collectively the "Account"):

First NBC Bank Certificate of Deposit Number 34884 with a current balance of $250,000.00

First NBC Bank Certificate of Deposit Number 34885 with a current balance of $250,000.00

As you know, the Account was previously renewed and extended in December 2012 for two three month automatic renewals through July 13, 2013 (the "Extended Maturity Date"). A copy of that agreement letter is attached for your reference.

Since the extended maturity date has expired, and the foundation does not wish to continue to serve as Guarantor for this project, we would like to withdraw the two certificates of deposit referenced above as collateral and requests that you return the funds to us effective immediately. Enclosed for your reference and use are the foundation's wiring instructions.

4354 S. Sherwood Forest Blvd. Suite 100 • Baton Rouge, Louisiana 70816
Phone: (225) 383-1672 Toll-Free: 1-877-helpla1 (1-877-435-7521)

EXHIBIT
H

We regret the circumstances surrounding the Pontchartrain Park CDC real estate development have not yielded the outcomes and benefits for families that we had hoped. Nonetheless, we appreciate your partnership and flexibility along the way and hope we may continue to partner on future endeavors for the benefit of families in New Orleans.

Sincerely,

Flozell Daniels, Jr.
CEO & President

FD: aac
Enclosures

Cc: Wendell Pierce, President, PPCDC
William Aaron, Board Chairman, PPCDC

# PROMISSORY NOTE

$15,000
BATON ROUGE, LA
DECEMBER 12, 2009

THIS NOTE HAS NOT BEEN REGISTERED PURSUANT TO ANY FEDERAL OR STATE SECURITIES LAWS. THE BORROWER MAY NOT SELL, TRANSFER, ASSIGN, PLEDGE OR EXCHANGE ITS INTEREST EXCEPT WITH THE CONSENT OF THE LENDER, LOUISIANA DISASTER RECOVERY FOUNDATION, SUBJECT TO APPLICABLE REGISTRATION REQUIREMENTS.

FOR VALUE RECEIVED, the undersigned, **PONTCHARTRAIN PARK CDC REAL ESTATE HOLDING, LLC**, a Louisiana special purpose limited liability company that is the wholly owned subsidiary of Pontchartrain Park Community Development Corporation, a non-profit corporation having its principal office and mailing address at **1010 Common Street, Ste. 2510 , New Orleans, LA 70112** (the "Borrower"), promises to pay to the order of **LOUISIANA DISASTER RECOVERY FOUNDATION**, a 501(c)(3) organization, (the "Lender") the principal sum of **$15,000 in return for a $500,000 12 month loan guarantee.** The principal sum shall be payable either (a) **12 months** after the disbursement is made, or (b) after the construction and sale of the first ten (10) homes, unless accelerated pursuant to an event of default or a significant material change in the business/financial affairs of the Borrower. In the event that the payment is made less than 12 months from the date of disbursement, the amount due will be prorated on a monthly basis.

The Lender recognizes that the Note has not been registered under the Securities Act of 1933, as amended (the "Act") or under the securities laws of any state, and therefore cannot be resold unless it is registered under the Act and applicable state securities laws or unless an exemption from registration is available.

1. This Note is subject to the following warranties and obligations on the part of the Borrower:

A. The Borrower warrants that:

(1) it is duly incorporated and in good standing under the laws of the State/Commonwealth of **Louisiana,**

(2) it is in compliance with all laws and regulations respecting its manner of organization and operation;

(3) it is an organization described in sections 501(c)(3), 509 (a)(1) or 170(b)(1)(A)(vi)[1] of the Internal Revenue Code of 1986 (the "Code"), and is exempt from federal income tax under section 501(a) of the Code, and that the Internal Revenue Service has made this determination; and,

(4) it has not engaged in any transaction or activity that could cause such tax exemption to be revoked, and no such transaction or activity is presently contemplated or under consideration.

B. The Borrower warrants that it is empowered to execute this Note and that this Note has been duly authorized and executed and constitutes a valid and legally binding obligation of the Borrower and does not violate or conflict with any existing restrictions upon or contractual obligations of the Borrower.

C. The Borrower warrants that the purpose of this Loan is to further its activities in support of its goals as a nonprofit organization engaged in community economic development, in furtherance of the exempt purposes of the Borrower and the Lender as described in section 170(c)(2)(b) of the Code, and as

[1] Section 170(b)(1)(A)(vi) means the organization receives contributions from the general public. May specify instead (b)(1)(A)(i) (church), (b)(1)(A)(ii) (educational organization), (b)(1)(A)(iii) (hospital), (b)(1)(A)(iv) (holds land for a state university), (b)(1)(A)(v) (a governmental unit). Or may say the organization is described in sections 501(c)(3) and 509(a)(2), which means the organization receives income from services and contributions.

EXHIBIT
I

described in Borrower's application to Lender and the Letter of Agreement between the parties which are incorporated hereinto by reference. The Borrower shall not apply any proceeds of the Loan or any income from the investment thereof in a manner that would constitute a "taxable expenditure" within the meaning of section 4945(d) of the Code. Taxable expenditure includes, without limitation, carrying on propaganda or otherwise attempting to influence legislation, participating in or intervening in (including the publishing or distribution of any statements) any political campaign on behalf of (or in opposition of) any candidate for public office, attempting to influence the outcome of any specific public election, carrying on, directly or indirectly, any voter registration drive, or making any grant or investment which does not comply with the requirements of section 4945(d)(5) of the Code [which limits the purposes to those described in Section 170(c)(2)(B) of the Code. ]

D. The Borrower warrants that there is no action, suit, investigation or proceeding pending or, to the knowledge of Borrower, threatened, by or before any court of governmental or administrative body or agency which may reasonably be expected to result in an adverse change in the activities, operations, assets or properties, in the tax-exempt or non-profit status, or in the condition (financial or otherwise) of the Borrower, or which impairs the ability of Borrower to perform its obligations under this Note.

E. There is no fact which the Borrower has not disclosed in writing to the Lender which materially adversely affects, or as far as the Borrower can foresee, will materially adversely affect the properties, affairs, prospectus or condition (financial or otherwise) of the Borrower or the ability of the Borrower to perform the obligation under the loan documents or to pay the principal or interest on the Loan when due.

F. The Borrower warrants that it has furnished the Lender or its agent with the following financial and other information: statements of financial condition of Borrower as of **September 1, 2009**, and the related statements of operations, changes in Borrower's net assets and changes in financial position for the period then ended, all certified by Borrower's customarily-employed certified public accountants (all of which statements of condition and of operations and changes are collectively referred to as the "Financial Statements"). The Financial Statements are true and correct in all material respects, have been prepared in accordance with generally accepted accounting principles uniformly and consistently applied, and fairly present the financial position of Borrower as of such dates and the results of its operations for the periods then ended. Any and all other statements furnished are in accordance with the books and records of Borrower and fairly present the information set forth therein.

G. The Borrower warrants that except as reflected in the Financial Statements or as set forth on Exhibit A: (i) Borrower has no indebtedness outstanding, (ii) Borrower has not made any investment in, advances to or guarantees of obligation to any person or entity, other than pursuant to fulfilling Borrower's objective of providing loans to its customers, and (iii) Borrower has no liabilities or obligations of any kind, whether accrued, absolute, contingent or otherwise and whether due or to become due, which liabilities or obligations would not be required to be disclosed on a balance sheet prepared in accordance with generally accepted accounting principles.

H. The Borrower warrants that it has filed all federal, state, local and other tax returns, information and reports required to be filed in any jurisdiction, and that all returns and reports were correct when filed in all material respects, and that it has paid all taxes, assessments, fees or other governmental charges which have become due and payable, except for any taxes which are being contested in good faith by appropriate proceedings and for which adequate reserves have been established. There are no tax audits or investigations presently being conducted or threatened in respect of Borrower.

I. The Borrower warrants that no consent, approval or authorization or, notice to or declaration or filing with, any governmental or administrative body or agency or other person on the part of the Borrower is required for the valid execution, delivery and performance by and enforceability against the Borrower of this Note, and acceptance or compliance with the terms and provisions hereof.

J. The Borrower warrants that it has insurance coverage in full force and effect and in such amounts as is customarily maintained by organizations engaged in similar activities.



K. The Borrower warrants that it is in compliance with all applicable national, state and local laws, rules, regulations, orders, writs or decrees, violation of which would have a material adverse effect on the activities, operations, assets, properties or condition (financial or otherwise) of the Borrower and has all material licenses, permits and other authorizations.

L. The Borrower warrants that since the date of the Financial Statements referenced in Section 1.F., it has not done any of the following (except as set forth in an attachment to this Note to be designated "Exhibit A"):

(1) mortgaged, pledged or subjected to lien, charge, security interest or to any other encumbrance any of its assets or properties, other than in the ordinary course of business;

(2) sold, assigned, transferred, leased or otherwise disposed of any of its assets or properties except for a fair consideration in the ordinary course of business or acquired any assets or properties, other than in the ordinary course of business; or

(3) suffered any significant material change in its financial condition or results of operations or in its assets, properties, operations or prospects.

M. The Borrower warrants that to the best of its knowledge, none of the key officers or employees of Borrower or PPCDC has a present intent to leave his or her employment or affiliation at the Borrower or PPCDC. Key employees and officers are defined to be

1. Wendell Pierce, President, PPCDC
2. ______________________
3. ______________________

N. The Borrower warrants that none of the information herein or documents furnished or to be furnished by Borrower to the Lender in connection with the execution and delivery of this Note and consummation of the transactions contemplated hereby, contained or will contain any material misstatement of fact or omitted or will omit to state any material fact required to be stated to make the statements therein not misleading.

2. A. The Borrower agrees to prepare, in accordance with GAAP uniformly and consistently applied, financial statements which fairly present its financial position and results of activities as well as narrative summaries of its activities no less frequently than **annually**. The Borrower will submit a copy of such documents to the Lender within forty-five (45) days after the end of each such period.

B. The Borrower agrees to abide by the reporting schedule attached as an Addendum to this Agreement.

C. The Borrower in general agrees to cooperate with the Lender with respect to requests for information the Lender may need from time to time to comply with its reporting requirements, whether regulatory or otherwise.

3. The Borrower agrees promptly (but in no event later than thirty (30) days after occurrence of an event) to notify the Lender in writing of any of the following events:

A. any change of address of its principal business office, or in its principal officers.

B. any proceeding instituted against the Borrower in, by or before any court, governmental or administrative body or agency, which proceeding could have a material effect upon the activities, operations, assets or properties of the Borrower;



C. any significant material change in the condition (financial or otherwise) or operations of Borrower including, but not limited to, loss of major funding, and an increase of more than 10% in the Borrower's default or delinquency rate; or

D. any substantial change in the business of the Borrower or any contracts or commitments not in the ordinary course of business of the Borrower.

4. Each of the following shall be considered an event of default of this Note:

A. The Borrower fails to make any payment of principal or perform any obligation required under this Note within thirty (30) days of the date when due;

B. The Borrower uses any portion of the proceeds of this Note other than in a manner specifically authorized in Section 1.C. of this Note;

C. Any representation or warranty made by Borrower in this Note, or in any report, certificate, financial statement or instrument furnished by Borrower in connection with this Note shall prove to have been false or misleading when made, in any material respect;

D. The Borrower violates or fails to observe or perform any covenant contained in Sections 2 and 3 hereof; or

E. If:

(i) any obligation of the Borrower for the payment of borrowed money (whether now existing or hereafter created or arising), becomes or is declared to be due and payable prior to the expressed maturity thereof, whether such obligation is owed to the Lender or any party other than the Lender; and

(ii) the Borrower is in default under any material agreement, financial or otherwise, between the Borrower and any party other than the Lender; or

F. The Borrower ceases to conduct its normal activities or sells, assigns or otherwise disposes of all or substantially all of its assets or undertakes any formal action in contemplation of dissolution, liquidation or termination of its business, or makes an assignment for the benefit of creditors or becomes subject to any proceeding under bankruptcy laws or applies for or consents to the appointment of a receiver or for any other form of debtor relief.

5. Whenever any event of default occurs and is not remedied to the satisfaction of the Lender, then, or at any time thereafter, the Lender may, by written notice, accelerate and declare all indebtedness of the Borrower under this Note to become due and payable beginning immediately upon such notice. The Borrower waives all other forms of notice, demand, presentment, protest or notice of protest to which it may otherwise be entitled. No waiver by the Lender of any event of default shall operate as a waiver of any other event of default or of the same subsequent event of default.

6. Notwithstanding the term of the Note, the Lender at all times retains the right to call this Note with written notice of at six months.

7. If there has been a significant material change in the Borrower's business/financial affairs, the Lender may, at any time, accelerate and declare all indebtedness of the Borrower under this Note due and payable, upon thirty (30) days notice. A significant material change in the business/financial affairs of the Borrower shall be deemed to occur if, in the sole discretion of the Lender: (1) there is a change in upper-management personnel of the Borrower or (2) the financial condition of the Borrower deteriorates. The Borrower waives all other forms of notice, demand, presentment or protest to which it may otherwise be entitled. No waiver by the Lender of any significant material

change in the business/financial affairs of the Borrower shall operate as a waiver of any other significant material change in the business/financial affairs of the Borrower or of the same subsequent significant material change in the business/financial affairs of the Borrower.

8. The Borrower shall have the right at any time, from time to time, to prepay in whole or in part, the principal and the interest due on this Note without premium or penalty.

9. From the date of purchase of the Certificate of Deposit guarantee, **the Simple Interest Rate shall be three percent (3%) per annum.**

10. The Borrower agrees to reasonably cooperate with the Lender's publicity and fundraising efforts as the Borrower's schedule permits. This includes, but is not limited to, allowing the Lender to use the Borrower's organizational name and description in fundraising and publicity materials, giving the Lender access to photographs and client stories of successful ventures, and periodically responding to reporters' questions (after consultation with the Lender). Cooperation may also extend to having the Borrower participate in periodic events or ongoing communications to the community by the Lender.

11. In the event that either party to this Note reasonably and in good faith considers it necessary to take action to protect or enforce its rights under this Note, whether or not suit is instituted thereby, the other party agrees to pay all reasonable resulting costs and expenses, including reasonable attorney's fees if such other party is found to be at fault.

12. This instrument is governed in all respects by the laws of the state of Louisiana. Any provision of this Note which is determined to be illegal, invalid or unenforceable shall be ineffective to the extent of such illegal, invalid or unenforceable provision for any reason whatsoever without invalidating the remaining portions of this Note.

13. This Note, the Letter of Agreement, the Addendum(s), and the exhibit(s) attached hereto contain the entire instrument governing the parties with respect to the subject matter hereof and supersedes all prior instruments or understandings, written or oral, in respect thereof. The exhibit annexed hereto is incorporated in and made a part of this Note.

14. This Note may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

15. All notices, requests, demands, consents, waivers and other communications given under any provision of this Note shall be in writing and shall be delivered in person or by courier to the party receiving such notice, which delivery shall be evidenced by an appropriate receipt therefore, or mailed postage prepaid, registered or certified mail, return receipt requested, addressed as follows:

**PONTCHARTRAIN PARK CDC**
**1010 Common Street, Ste 2510**
**New Orleans, LA 70112**
**Attn: Wendell Pierce**

**LOUISIANA DISASTER RECOVERY FOUNDATION**
**4354 South Sherwood Forest Blvd., Ste 200**
**Baton Rouge, LA 70816**
**Attn: Landon Williams**

16. No change, modification or waiver of any provision hereof shall be valid unless in writing and signed by the party to be bound.

17. No action taken pursuant to this Note, including without limitation any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance by the other party with any representations, warranties, covenants or agreements contained in this Note. The waiver by any party hereto of a breach of any provision of this Note shall not operate or be construed as a waiver of any subsequent breach.

IN WITNESS WHEREOF, the Borrower, intending to be legally bound, has duly executed and delivered this Promissory Note.

**For Pontchartrain Park CDC Holding by its sole member Pontchartrain Park Community Development Corporation:**

By: [signature] 12.14.09
(Signature)

Wendell Pierce, President
(Print name and title)

Witnessed by: [signature]
(Witness)

Charline Wright
(Print name and title)

**Notarized By:** [signature]
Fatimah Conley-Mayfield
12.14.2009

FATIMAH CONLEY-MAYFIELD
NOTARY PUBLIC
State of Louisiana
My Commission Is Issued For Life
La. Bar Roll No. 30448

**EXHIBIT A**

(List any exceptions to the Borrower's warranties and representations here. If none, state none)

Funds borrowed subsequent to September 1, 2009:

| | |
|---|---|
| NONE | |
| | |
| | |
| | |

FOR PONTCHARTRAIN PARK CDC HOLDING BY ITS SOLE MEMBER PONTCHARTRAIN PARK COMMUNITY DEVELOPMENT CORPORATION.

By: [signature] 12-14-09
(Signature)

Wendell Pierce, President
(Print name and title)

Witnessed by: [signature]
(Witness)

Charline Wright
(Print name and title

**ADDENDUM**

1) Annual financial statements and a portfolio aging report are due 45 days after the end of each year.

2) Borrower shall submit audited financial statements and all supplementary reporting information no later tha 150 days after its year-end. Lender will provide Borrower with a checklist delineating the supplementary information required no later than 30 days prior to the aforementioned deadline.

3) Pontchartrain Park CDC will submit reports to LDRF as detailed in the accompanying PRI Agreement.

4) The PRI Application submitted by PONTCHARTRAIN PARK CDC to LOUISIANA DISASTER RECOV FOUNDATION to support its request for a PRI is a part of this Agreement and is incorporated hereinto by reference.

All information requested should be sent directly to:

Landon R. Williams
Director, Housing and Small Business Development
LOUISIANA DISASTER RECOVERY FOUNDATION
4354 South Sherwood Forest Blvd, Ste 200
Baton Rouge, LA 70816



At work for resilient communities.

BOARD of DIRECTORS
Ambassador James Joseph, Chairman
C. Berwick Duval, II, J.D., Vice Chairman
John R. Redd, III, CPA, Secretary and Treasurer
Brenda Stewart Birkett, Ph.D.
Lorena Clark
Kit Conroy
Julio Galan
Linetta J. Gilbert
Retired Lieutenant General Russel Honoré
R. King Milling

Flozell Daniels, CEO and President

4354 S. Sherwood Forest Blvd.
Suite 200
Baton Rouge, LA 70816

PHONE 225.383.1672
FACSIMILE 225.383.1858
TOLL FREE 1.877.HELPLA

www.foundationforlouisiana.org

March 6, 2012

Wendell Pierce, President
Pontchartrain Park Community Development Corporation
5662 Press Drive
New Orleans, Louisiana 70126

RE: PRI account number 20090139

Mr. Pierce:

This notice is to inform you that the PRI balance of $530,205.48 is to be paid in full by **March 14, 2012.**

The payoff balance includes the following:

| | |
|---|---|
| Principal Balance: | 500,000.00 |
| Current Interest: | 30, 205.48 |
| Total | $530,205.48 |

If the final payment is not received this day, assess a daily interest charge of **$41.10** each day from above date until receipt of final payment.

Thank You,

Eric D. Shaw
Vice President of Programs and Policy

cc: Christy Wallace Slater, Director of Economic Opportunity

**Payoff Balance for Loan # 20090139**
**as of**
**Wednesday, March 14, 2012**
**is**
**$530,205.48**

This payoff balance includes the following:

| | |
|---|---|
| Principal Balance: | 500,000.00 |
| Past Interest: | 0.00 |
| Current Interest: | 30,205.48 |
| Fees Due: | 0.00 |
| Tech Assist Fees: | 0.00 |
| Total: | $530,205.48 |

If the final payment is not received this day, assess a daily interest charge of
**$41.10**
each day from above date until receipt of final payment.



At work for resilient communities.

March 7, 2012

BOARD of DIRECTORS
Ambassador James Joseph, Chairman
C. Berwick Duval, II, J.D., Vice Chairman
John R. Redd, III, CPA, Secretary and Treasurer
Brenda Stewart Birkett, Ph.D.
Lorena Clark
Kit Conroy
Julio Galan
Linetta J. Gilbert
Retired Lieutenant General Russel Honoré
R. King Milling

Flozell Daniels, CEO and President

4354 S. Sherwood Forest Blvd.
Suite 200
Baton Rouge, LA 70816

PHONE 225.383.1672
FACSIMILE 225.383.1858
TOLL FREE 1.877.HELPLA

www.foundationforlouisiana.org

Wendell Pierce, President
Pontchartrain Park Community Development Corporation
5662 Press Drive
New Orleans, Louisiana 70126

RE: Collateral replacement and PRI repayment

Mr. Pierce:

In March 2010, Foundation for Louisiana ("FFL", "Foundation", formerly Louisiana Disaster Recovery Foundation) funded a Program Related Investment ("PRI") in the amount of $500,000 to Pontchartrain Park Community Development Corporation ("PPCDC") to help capitalize, in the form of a loan guarantee, PPCDC's residential home development project. The original term of this PRI was one year at 3% annual interest. The PRI was disbursed as two $250,000 Certificates of Deposit ("CD"), housed at First NBC bank and pledged as collateral against the construction loan. Due to delays in the overall development, FFL has extended the PRI and collateral pledge twice, with the new loan term and collateral extension ending on March 14, 2012.

Based on the extension letter signed by FFL, PPCDC, and First NBC Bank on September 11, 2011 the following agreement was reached regarding the collateral replacement:

1. FFL agreed to extend the collateral for an additional six month term, with the term ending March 14, 2012;
2. First NBC Bank ("Lender") agreed to extend its offset provision for an additional six month term, allowing PPCDC to identify and provide replacement collateral for the construction loan;
3. PPCDC agreed to provide sufficient replacement collateral by or before March 9 2012, or the Lender will proceed with the offset.

As of March 6, 2012 the replacement collateral has not been provided to First NBC Bank. On March 9, 2012 we will consult with First NBC to determine if the replacement collateral has been provided and accepted by First NBC.

If the collateral is replaced by PPCDC, FFL will cash in the two CDs that are currently being pledged as loan guarantees. This will pay off the principal balance of PPCDC's loan with FFL in the amount of $500,000, and PPCDC will be responsible for the interest payment of $30,205.48 by March 14, 2012.

If PPCDC does not provide replacement collateral to First NBC by March 9, 2012, the loan guarantee provided by FFL will be called by the bank and PPCDC will be responsible for the full loan balance to FFL in the amount of $530,205.48 by March 14, 2012.

You will also receive a PRI loan payoff notice from the Foundation via email and through the postal service. If you should have any questions or need any additional information regarding this matter, please contact Christy W. Slater, Director of Economic Opportunity at 225-772-2302, or via email at cwslater@foundationforlouisiana.org.

Thank You,

Eric D. Shaw
Vice President of Programs and Policy

cc: Edward Morris, Treasurer, PPCDC
cc: Paul Taylor, SRP Development
cc: Flozell Daniels, Jr.
cc: Christy W. Slater



At work for resilient communities.

December 14, 2012

BOARD of DIRECTORS
Ambassador James Joseph
*Chairman*
C. Berwick Duval, II, J.D.
*Vice Chairman*
John R. Redd, III, CPA
*Secretary and Treasurer*
Brenda Stewart Birkett, Ph.D.
Lorena Clark
Kit Conroy
Julio Galan
Linetta J. Gilbert
Retired Lieutenant General
Russel Honoré
R. King Milling

Flozell Daniels
*CEO and President*

4354 S. Sherwood Forest Blvd.
Suite 200
Baton Rouge, LA 70816

PHONE 225.383.1672
FACSIMILE 225.383.1858
TOLL FREE 1.877.HELPLA

www.foundationforlouisiana.org

Wendell Pierce, President
William Aaron, Board Chairman
Pontchartrain Park Community Development Corporation
5662 Press Drive
New Orleans, Louisiana 70126

**RE: PRI Repayment Due December 31, 2012**

Mr. Pierce and Mr. Aaron:

In March 2010, Foundation for Louisiana ("FFL", "Foundation", formerly Louisiana Disaster Recovery Foundation) funded a Program Related Investment ("PRI") in the amount of $500,000 to Pontchartrain Park Community Development Corporation ("PPCDC") to help capitalize, in the form of a loan guarantee, PPCDC's residential home development project. The original term of this PRI was one year at 3% annual interest. The PRI was disbursed as two $250,000 Certificates of Deposit ("CD"), housed at First NBC bank and pledged as collateral against the construction loan. Due to delays in the overall development, PPCDC has requested and FFL has extended the PRI and collateral pledge multiple times, with the latest extension scheduled to expire on December 31, 2012. As a part of the extension processes, First NBC Bank ("Lender") agreed to extend its offset provision against the Certificates of Deposit and allow PPCDC to identify and provide replacement collateral for the construction loan. PCDC for its part agreed to provide sufficient replacement collateral to the Lender to negate the potential of the Lender proceeding with the offset against FFL's Certificates of Deposit.

The PRI loan agreement between FFL and PPCDC will expire on December 31, 2012. If the collateral has been replaced by PPCDC, FFL will cash in the two CDs that are currently being pledged as loan guarantees. This will pay off the principal balance of PPCDC's loan with FFL in the amount of $500,000, and PPCDC will be responsible for an accumulated earned interest payment of $42,205.48 on December 31, 2012. Additional interest will continue to become duly payable and accumulate at the rate of $41.10 per day after the December 31, 2012 due date.

If PPCDC has not provided replacement collateral to First NBC by the December 31, 2012 due date, and the loan guarantee provided by FFL is called by the bank, PPCDC will be responsible for the full loan balance (principal and interest) to FFL in the amount of $542,205.48 on December 31, 2012.

You will also receive a PRI loan payoff notice from the Foundation via email and through the postal service. If you should have any questions or need any additional information regarding this matter, please contact me at 225-772-2302, or via email at cwslater@foundationforlouisiana.org.

Thank You,

Christy Wallace Slater
Director of Economic Opportunity

cc: Edward Morris, Treasurer, PPCDC
cc: Jonah Dowling, First NBC CDC
cc: Flozell Daniels, Jr., Foundation for Louisiana



BOARD of DIRECTORS

Ambassador James Joseph
*Chairman*

C. Berwick Duval, II, J.D.
*Vice Chairman*

John R. Redd, III, CPA
*Secretary and Treasurer*

Brenda Stewart Birkett, Ph.D.

Lorena Clark

Kit Conroy

Julio Galan

Linetta J. Gilbert

Retired Lieutenant General
Russel Honoré

R. King Milling

Flozell Daniels, Jr.
*CEO and President*

4354 S. Sherwood Forest Blvd.
Suite 200
Baton Rouge, LA 70816

PHONE 225.383.1672
FACSIMILE 225.383.1858
TOLL FREE 1.877.HELPLA

FoundationforLouisiana.org

8/29/2013

Pontchartrain Park CDC
Attn: Wendell Pierce
5662 Press Dr.
New Orleans, LA 70126

This is an invoice for the payment due on the loan referenced below. Please return a copy of this letter with the payment indicated below. Make your check payable to: **Foundation for Louisiana.**

| | |
|---|---|
| Loan ID | SBHO-H01-20090139 |
| Original Loan Amt: | $500,000 |
| **Amount Due:** | **$550,260.27** |
| Payment Due Date: | 7/15/2013 |

| | |
|---|---|
| Amount last received: | $0.00 |
| Date last received: | |
| Interest rate: | 3% |

**Per the terms of the agreement, the interest of $50,260.27 was due within 30 days of the payment date or by 8/15/2013.**

Please call our office at (225) 383-1672 if you have any questions about this invoice.

Sincerely,

Matt Nunez
COO